# PEPE&HAZARD LLP

LAW OFFICES

225 ASYLUM STREET
HARTFORD, CONNECTICUT 06103-4302
860/522-5175 FACSIMILE 860/522-2796
www.pepehazard.com

PETER L. COSTAS
Attorney At Law
‡Also Admitted in New York
Direct: 860.241.2630
pcostas@pepehazard.com

November 18, 2003

BY FACSIMILE/MAIL

Diane Bucci, Esq.
Robinson & Cole
693 East Main Street
Stamford CT 06904

Dear Diane:

    Pit Stop v. Plas-Pak
    Our File – 28596-651/PLAS

  With reference to your letter of November 13, 2003 I will comment with respect to the paragraphs *seriatim*.

  With respect to the first paragraph, do you have any correspondence relating to this activity by Mr. Rowan other than the undated letter? Your client must have received an invoice from him and he must have the sample or samples which he reviewed.

  With respect to your second paragraph, I appreciate the information and I would appreciate your forwarding to me six (6) complete packages with Plas-Pak syringe components if available.

  With respect to paragraph three, my letter is incorrect. The 4 cavity mold for the plunger still exists. A complete 8 cavity mold was built in early 2001.

  With respect to the fourth paragraph, the original stack-ups, i.e., cavities cores and stripper rings were assembled into an 8 cavity frame and 4 new stack-ups were added to that frame. The 16 cavity mold is a completely separate mold. Enclosed is a memo on producing the 16 cavity mold assembly bearing Document No. 0276.

PEPE&HAZARD LLP

Diane Bucci, Esq.　　　　　　　　　　　November 18, 2003
　　　　　　　　　　　　　　　　　　　Page 2

　　　With respect to the fifth paragraph of your letter, I believe you have no idea of the volume which can produce by a 4 cavity mold. The original 4 cavity mold would produce approximately 750 pieces per hour. Ten thousand pieces is not a large run. It takes a substantial amount of time to set up the mold, but production thereafter is very rapid. Once a mold is set up, then orders for that syringe will be run for a multiplicity of different customers using whatever resin formulations the customers have specified. Any change in formulation from one customer to another will require a short time for cleaning the first resin from the machine barrel and supply system before the next customer's run can commence.

　　　With respect to the sixth paragraph of your letter, the mold design remains the same for the added molds. The only change in processing conditions would be an increase in the time necessary to fill 8 cavities instead of 4, or 16 instead of 8.

　　　With respect to the seventh paragraph of your letter, there are no computer engineering programs used to run the machinery. One does not pour the plastic resin into the molds or measure out the resins. The resin flows into the mold cavities under injection pressure until they are filled.

　　　With respect to the eighth paragraph of your letter, the only changes are the mold frame and providing conduits to the individual molds. The molds retain a common design configuration and dimensions.

　　　With respect to the ninth paragraph, I refer you to the fifth paragraph of my letter of October 21, 2003 which I believe was the second or third time I explained the situation to you. We did provide you with copies of all of the formulations and the run sheets which were used for the Pit Stop syringes.

　　　With respect to the tenth paragraph of your letter, we do not agree that you have an opportunity to supplement the expert report or that this is an early stage in the litigation. We are at the end of discovery and the expert reports are the last items in the discovery agenda.

　　　With respect to the eleventh paragraph, we look forward to having the opportunity to inspect the Rowan specimens and identify those portions which were referred to in his undated letter. We are not impressed by the fact that Mr. Tobin did not find it necessary to see the cut specimens. We also look forward to seeing the samples which Mr. Tobin used for purposes of his opinion. Are you representing that Exhibit M(a) are the specimens that were cut by Mr. Tobin? If so, would you please produce identification of the specific areas which he measured.

Diane Bucci, Esq.   November 18, 2003
Page 3

    With respect to the twelfth paragraph of your letter, I would appreciate additional specimens for our expert's use.

Very truly yours,

Peter L. Costas

PLC:jas
Enclosure
Cc:   Philip J. O'Connor, Esq.
       Mr. Charles Frey

# PEPE&HAZARD LLP

LAW OFFICES

225 ASYLUM STREET
HARTFORD, CONNECTICUT 06103-4302
860/522-5175 FACSIMILE 860/522-2796
www.pepehazard.com

PETER L. COSTAS
Attorney At Law
‡Also Admitted in New York
Direct: 860.241.2630
pcostas@pepehazard.com

November 18, 2003

E-MAIL (dbucci@rc.com)

Diane Bucci, Esq.
Robinson & Cole
693 East Main Street
Stamford CT 06904

Dear Diane:

        Pit Stop v. Plas-Pak
        Our File – 28596-651/PLAS

    Since we would like our expert to examine the materials provided to Mr. Tobin as well as the materials which were supplied to Mr. Rowan for his report which is due December 2, 2003, I would appreciate your prompt response and cooperation as requested in my letter to you dated November 4, 2003 with respect to the materials furnished to the experts. If you cannot make these available early next week, I trust that you will agree to an extension to a date one week after the inspection.

    In addition, I would appreciate your favorable consideration with respect to my request for additional specimens set forth in my second letter of November 4, 2003.

                                                                    Very truly yours,

                                                                    Peter L. Costas

PLC:jas
Cc:    Philip J. O'Connor, Esq.
         Mr. Charles Frey

PLC/28596/651/655380v1
11/18/03-HRT/

# ROBINSON & COLE LLP

DIANE BUCCI

Financial Centre
695 East Main Street
P.O. Box 10305
Stamford, CT 06904-2305
Main (203) 462-7500
Fax (203) 462-7599
dbucci@rc.com
Direct (203) 462-7558

Also admitted in New York

November 13, 2003

### Via Facsimile & First Class Mail

Peter L. Costas, Esq.
Pepe & Hazard LLP
225 Asylum Street
Hartford, CT 06103

Re: **Pit Stop Technologies, Inc. v. Plas-Pak Industries, Inc.**

Dear Attorney Costas:

With respect to our conversation of November 7, 2003, Steve Rowan was consulted by Pit Stop in 1999, and conducted the June 1999 test referenced in Pit Stop's Exhibit O to our September 11, 2003 production. As stated in our telephone conversation, we expect to call Steve Rowan as a fact witness with respect to the event's concerning the syringes in 1999.

With respect to your correspondence of October 8, 2003, the syringe does not constitute the entirety of the windshield repair kit. The kit includes a pedestal to stabilize the hand of the person utilizing the syringe, an o-ring to focus the syringe injection, instructions, and other packaging material.

With respect to your correspondence of October 21, 2003 (the "Letter"), the third paragraph on page 1 represents that there are no cap and plunger mold replacements and that those used in 1998-1999 are still in use. However, your September 24, 2003 responses to Pit Stop's Interrogatories, Response No. 6, states that the four cavity mold for the plunger was replaced with an eight cavity one. These responses are inconsistent. Please clarify.

In addition, your interrogatory response of April 10, 2003 indicates that the syringe mold was changed from a 4 to an 8 cavity mold in September of 1998. It does not indicate when this 8 cavity mold was changed to a 16 cavity mold. Please provide that information.

NOV 1 4 2003



Law Offices
BOSTON
HARTFORD
NEW LONDON
STAMFORD
GREENWICH
NEW YORK

*www.rc.com*

STAM1-746332-1

# ROBINSON & COLE LLP

November 13, 2003
Page 2

The fifth paragraph of page 1 of the Letter suggests that you have explained the material change issue already. However, your explanations are unsatisfactory. The question is whether there is ONLY ONE such mold utilized by Plas-Pak. Are you representing that Plas-Pak had ONE four cavity mold that it used to supply MORE THAN ONE customer at a time? It seems unfathomable in light of the fact that Pit Stop alone ordered 10,000 syringes at a time. If other customer's orders were also filled using that ONE mold, the amount of syringes that they ordered are relevant to this matter. Using ONE four cavity mold to produce this large quantity of syringe barrels could certainly serve to explain the shoddy, substandard condition of the syringes supplied by Plas-Pak to Pit Stop.

Also, I understand that you are representing that going to mold assembly with a different number of cavities does not require a change in mold design or changes in the processing conditions. Is this a representation that there were no such changes made?

With respect to the second paragraph of page 2 of the Letter, which actually constitutes a sentence referring me to paragraph 1 of same, I am interested in any computer or engineering programs used to run the machinery that molds the barrels, i.e., to pour the plastic resin into the molds, to measure out the resins, to eject the hardened plastic, etc.

With respect to the fifth paragraph on page 2, see above. Again, machinery used to measure, spread, pour, smooth, cool, and eject the syringe resin would have to be altered in order to accommodate four extra cavities, unless you are representing that each mold was poured by hand.

With respect to your fourth paragraph on page 3, providing information on one such change does not satisfy your obligation to provide pertinent discovery. Please explain ALL material changes.

With respect to your correspondence of October 22, 2003, I am assuming that you will agree that we are entitled to supplement our expert report at this early stage in the litigation.

With respect to the actual samples referred to by Mr. Rowan, I have not yet been able to contact him. I will make them available to you as soon as they are obtained by us. However, Mr. Tobin did not find it necessary to see the specimen cut in half by Mr.



# ROBINSON & COLE LLP

November 13, 2003
Page 3


Rowan to corroborate his findings. Instead, he simply cut samples of the earlier and later syringes in half to determine that the earlier product is thicker than the later one. We have provided you with samples of each. You are welcome to test them, as well. In fact, the difference in thickness is indicated in the cut samples we sent you in Exhibit M-a of our supplemental production responses. At least in this respect Mr. Tobin may need to supplement his report by providing information on the testing I just referenced.

With respect to your correspondence of November 4, 2003, as stated in our responses to your discovery requests, the Japanese did not return the defective black product to Pit Stop. Thus, we have no samples to provide you with. Also, your conversation with me of November 7th indicated that your November 4th letter was requesting samples of the product Pit Stop produced subsequent to purchasing Syringes from Plas-Pak. We provided you with samples of that product with our supplemental production in Exhibit K-a, which contained samples of the product without resin, and K-b, which provided samples of the product with resin.

I sincerely hope this addresses your concerns. I have forwarded your supplemental interrogatories to Pit Stop for a response. As always, feel free to contact me with comments.

Sincerely,

*Diane Bucci (ta)*

Diane Bucci

Enclosures

cc:   David Burke
      Louis Gunsburg



# PEPE&HAZARD LLP

LAW OFFICES

225 ASYLUM STREET
HARTFORD, CONNECTICUT 06103-4302
860/522-5175 FACSIMILE 860/522-2796
www.pepehazard.com

PETER L. COSTAS
Attorney At Law
‡Also Admitted in New York
Direct: 860.241.2630
pcostas@pepehazard.com

November 10, 2003

E-MAIL

Diane Bucci, Esq.
Robinson & Cole
693 East Main Street
Stamford CT  06904

Dear Diane:

                    Pit Stop v. Plas-Pak
                    Our File – 28596-651/PLAS

    Confirming our telephone conference of Friday, I am looking forward to a response to my letter of October 8, 2003 and the specimens identified in my letter of November 4, 2003.

    As to your expert's report, the Court set a date for the filing of the report by the expert, and the report which you filed on the last day for doing so is that report. He cannot go beyond that which he has set forth in that report.

    If you will provide copies of the materials you provided to your expert including your correspondence, this may eliminate the requirement to take his deposition since his only real activity has been to examine the collection of syringes which you provided to him.

    If you do not do so, we will notice his deposition. This will be outside the date set by the Court for the deposition of your expert, and I assume that you will stipulate to an extension to accommodate the situation.

    I would also appreciate the date of the letter of Mr. Rowan in view of your claim that he consulted with your client at the time of the failures.

PLC/28596/651/654373v1
11/10/03-HRT/

PEPE&HAZARD LLP

We look forward to your early response with respect to all of these matters.

Very truly yours,

Peter L. Costas

PLC:jas
Cc:   Mr. Charles Frey
      Philip J. O'Connor, Esq.

# PEPE&HAZARD LLP

LAW OFFICES

225 ASYLUM STREET
HARTFORD, CONNECTICUT 06103-4302
860/522-5175 FACSIMILE 860/522-2796
www.pepehazard.com

PETER L. COSTAS
Attorney At Law
‡Also Admitted in New York
Direct: 860.241.2630
pcostas@pepehazard.com

November 4, 2003

E-MAIL

Diane Bucci, Esq.
Robinson & Cole
693 East Main Street
Stamford CT 06904

Dear Diane:

        Pit Stop v. Plas-Pak
        Our File – 28596-651/PLAS

With reference to your Expert Report, I trust that you appreciate the fact that your expert's testimony will be limited to only those matters which were specifically described in his report.

If you make available for examination and copying (if appropriate) all of materials provided to the expert, it may not be necessary to take his deposition since he will only testify with respect to his examination of 189 syringes. As to his observations on whatever was contained in Mr. Rowan's letter; it does not appear that he has reviewed the specimens utilized by Mr. Rowan in reaching his conclusions.

Accordingly, we request that you promptly make available for our inspection and copying, etc., all of the materials provided to Mr. Tobin and any correspondence with Mr. Tobin relative to his report as is provided in Rule 26(b)(4). I would also like to schedule his deposition for November 13 or November 14 in the event that the inspection of the materials which were provided to Mr. Tobin should require his examination.

PLC/28596/651/653550v1
11/04/03-HRT/

**PEPE&HAZARD** LLP

Diane Bucci, Esq.                              November 4, 2003
                                               Page 2


    Your early attention in this matter would be most appreciated. If the materials can be made available for inspection in your Hartford office, I would find that extremely helpful. If not, I will make the trip to Stamford to examine the materials in your office.

                                    Very truly yours,

                                    Peter L. Costas

PLC:jas
Cc:   Mr. Charley Frey
      Philip J. O'Connor, Esq.

# PEPE&HAZARD LLP

LAW OFFICES

225 ASYLUM STREET
HARTFORD, CONNECTICUT 06103-4302
860/522-5175 FACSIMILE 860/522-2796
www.pepehazard.com

PETER L. COSTAS
Attorney At Law
‡Also Admitted in New York
Direct: 860.241.2630
pcostas@pepehazard.com

November 4, 2003

E-MAIL

Diane Bucci, Esq.
Robinson & Cole
693 East Main Street
Stamford CT 06904

Dear Diane:

<u>Pit Stop v. Plas-Pak</u>
<u>Our File – 28596-651/PLAS</u>

In order to provide our expert with materials necessary to formulate his opinions, I am requesting the following additional specimens from your client. These are the following:

12 Plas-Pak Syringes Returned By the Japanese Importer As Defective
12 Plas-Pak Unfilled Syringes which your client has in inventory
12 Syringes made by the molder subsequent to Plas-Pak
12 Filled syringes made by the molder subsequent to Plas-Pak

It appears that your client is now having syringes molded by another molder. If so, we would appreciate 12 samples of the syringe currently being utilized by Pit Stop.

PLC/28596/651/653550v1
11/04/03-HRT/

PEPE&HAZARD LLP

Diane Bucci, Esq.                                        November 4, 2003
                                                         Page 2

Your early attention in this matter would be appreciated.

                                        Very truly yours,

                                        Peter L. Costas

PLC:jas
Cc:     Mr. Charles Frey
        Philip J. O'Connor, Esq.

PLC/28596/651/653550v1
11/04/03-HRT/

# PEPE&HAZARD LLP

LAW OFFICES

225 ASYLUM STREET
HARTFORD, CONNECTICUT 06103-4302
860/522-5175 FACSIMILE 860/522-2796
www.pepehazard.com

PETER L. COSTAS
Attorney At Law
‡Also Admitted in New York
Direct: 860.241.2630
pcostas@pepehazard.com

November 4, 2003

E-MAIL

Diane Bucci, Esq.
Robinson & Cole
693 East Main Street
Stamford CT 06904

Dear Diane:

    Pit Stop v. Plas-Pak
    Our File – 28596-651/PLAS

  At your earliest convenience, I would appreciate a response to my letter of October 8, 2003 so that we can move forward with preparation of this case for trial.

Very truly yours,

Peter L. Costas

PLC:jas
Cc: Mr. Charles Frey
   Philip J. O'Connor, Esq.

PLC/28596/651/653550v1
11/04/03-HRT/

# PEPE&HAZARD LLP

LAW OFFICES

225 ASYLUM STREET
HARTFORD, CONNECTICUT 06103-4302
860/522-5175 FACSIMILE 860/522-2796
www.pepehazard.com

PETER L. COSTAS
Attorney At Law
‡Also Admitted in New York
Direct: 860.241.2630
pcostas@pepehazard.com

October 22, 2003

E-MAIL (dbucci@rc.com)

Diane Bucci, Esq.
Robinson & Cole
695 East Main Street
Stamford CT 06904

Dear Diane:

        Pit Stop v. Plas-Pak
        Our File – 28596-651/PLAS

With reference to your Plaintiff's Expert Disclosure, when can we expect his final report? Obviously, Exhibit A which is his letter of October 14, 2003, indicates that it is an initial report.

We will also expect you to have him produce all materials and information furnished to him for the purpose of generating a report.

Since you have not designated Mr. Rowan as an expert, are you planning to call him as a witness?

Your prompt response would be appreciated since we do wish to schedule the deposition of Mr. Tobin when we have his complete report and the materials provided to him to generate that report.

Very truly yours,

Peter L. Costas

PLC:jas
Enclosure
Cc:    Philip J. O'Connor, Esq.
        Mr. Charles Frey

PLC/28596/651/652011v1
10/22/03-HRT/

# PEPE&HAZARD LLP

LAW OFFICES

PETER L. COSTAS
Attorney At Law
‡Also Admitted in New York
Direct: 860.241.2630
pcostas@pepehazard.com

225 ASYLUM STREET
HARTFORD, CONNECTICUT  06103-4302
860/522-5175 FACSIMILE 860/522-2796
www.pepehazard.com

October 21, 2003

**FEDERAL EXPRESS**

Diane Bucci, Esq.
Robinson & Cole
695 East Main Street
Stamford CT  06904

Dear Diane:

        Pit Stop v. Plas-Pak
        Our File – 28596-651/PLAS

    With reference to your letter of October 6, 2003, I have received some additional materials from the client and enclose documents bearing Bates Nos. 0262-0275.

    With respect to the fourth paragraph on page 1 of your letter, we have provided all that we intend to provide absent a Court order.

    With respect to the last paragraph on page 1, we are enclosing a set of documents bearing Bates Nos. 0085-0089 which are essentially the same as documents bearing Bates Nos. 0017-0021.

    With respect to the first paragraph on page 2 of your letter, there are no cap and plunger replacement molds. The molds were in use during the period 1998-1999, and are still in use. We are perfectly willing to allow you to inspect the 4 and 8 cavity molds used for the barrel and the molds for the cap and plunger. The 16 cavity mold is not an issue here and I see no reason to allow inspection, since the 16 cavity mold was fabricated well after the period in issue.

    With respect to the second paragraph on page 2, we have explained these matters to you previously. When production levels increased, a mold assembly with a greater number of cavities was made and put into service. The material was changed at the conclusion of the run for Pit Stop to run the same syringe for a different customer. We are enclosing herewith a copy of Document No. 0262 which is the run for the other customer. You will note that it is using resin formulation S-306 as opposed to resin formulation S-555 which was employed for the run for Pit Stop as shown on the inspection sheet Document No. 0060.

PLC/28596/651/651779v1
10/21/03-HRT/

PEPE&HAZARD LLP

October 21, 2003
Page 2

With respect to the third paragraph of your letter on page 2, I do not know what you are seeking. We have provided you with all of the information on the syringes and the components parts, and the molds therefor. We provided you with the information concerning the molds and resins to make the barrel of the syringe which is the allegedly failed component. Since apparently you are now interested in the other elements of the syringe, I am enclosing drawings with respect to the cap and the plunger. Although these drawings were generated in 1999, we believe that they accurately reflect the cap and plunger as it was being manufactured during the period 1997-1999. These drawings are marked as Document No. 0268 and 0269. Also enclosed are additional formulation sheets for the resin formulations used for the cap and plunger to supplement those for the barrel. All of these identify the manufacturer of the resin or additives. We have advised you of the manufacturer of the molds; we do not know from whom they purchase the metal. I do not know what you mean by PRODUCT if it is not the syringe.

With respect to the fourth paragraph of your letter, see the preceding paragraph.

With respect to the fifth paragraph, see the formulation sheets which have been provided.

With respect to the sixth paragraph on page 2 of your letter, we have previously stated to you, and repeat, that the run ended for that particular customer and a new run was begun for the same syringe but using a different formulation for a second customer. That run sheet has been provided to you.

With respect to the seventh paragraph on page 2 of your letter, your statements are not accurate. We have provided you with all of the information concerning the design, production, manufacture, parts and materials utilized in the molds to produce the syringes for your client. Going to a mold assembly with a different number of cavities does not require a change in mold design or changes in the processing conditions.

With respect to the last paragraph bridging page 2 and continuing onto page 3, neither I nor the client understand what you mean by "cutting program". We do not have drawings of the molds. We have given you parts drawings. Any mold drawings if prepared would have been prepared by the fabricator of the molds, and that is Connecticut Tool. There were no changes in the manner in which the molds were filled and ejected. As to the personnel involved in the change to the syringe, the only change in design was that made to the barrel by Mr. Sandholm and shown in Document No. 0246.

Turing to the first full paragraph on page 3 of your letter, we have given you all such documents which could presently be located. Your client usually placed verbal orders.

**PEPE&HAZARD** LLP

October 21, 2003
Page 3

With respect to the second full paragraph, no additional documents have been found.

With respect to the third full paragraph, we are furnishing concurrently herewith copies of Document Nos. 0264-0267.

With respect to the fourth full paragraph, you are not correct.

With respect to the fifth full paragraph, I believe we have answered this question several time, and hopefully the additional information provided will terminate your repeated requests.

With respect to the last paragraph of your letter, you have the drawing reflecting the change. Enclosed is Document No. 0274 which is believed to be a drawing of the barrel prior to the change.

I trust that our supplemental responses will satisfy your needs.

Very truly yours,

Peter L. Costas

PLC:jas
Enclosure
Cc:  Philip J. O'Connor, Esq.
     Mr. Charles Frey

# EXHIBIT B

FORM b9a 7cna (Chapter 7 Individual or Joint Debtor No Asset Case) (12/03)   Case Number 03-35465-HRT

# UNITED STATES BANKRUPTCY COURT
## District of Colorado

## Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines

A chapter 7 bankruptcy case concerning the debtor(s) listed below was filed on 12/23/03.

You may be a creditor of the debtor. **This notice lists important deadlines.** You may want to consult an attorney to protect your rights. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below. NOTE: The staff of the bankruptcy clerk's office cannot give legal advice.

### See Reverse Side For Important Explanations.

Debtor(s) (name(s) used by the debtor(s) in the last 6 years, including married, maiden, trade, and address):
Louis Charles Gunsberg
3273 Pierson St.
Wheat Ridge, CO 80033

| Case Number:<br>03-35465-HRT | Social Security/Taxpayer ID Nos.:<br>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 |
|---|---|
| Attorney for Debtor(s) (name and address):<br>Stephen C. Nicholls<br>1725 Gaylord St.<br>Denver, CO 80206<br>Telephone number: 303-329-9700 | Bankruptcy Trustee (name and address):<br>Cynthia Skeen<br>PO Box 218<br>Georgetown, CO 80444<br>Telephone number: 303-569-3134 |

### Meeting of Creditors:
Date: **February 2, 2004**   Time: **03:00 PM**
Location: **U.S. Custom House, 721 19th St., Room 125, Denver, CO 80202**

### Deadlines:
Papers must be *received* by the bankruptcy clerk's office by the following deadlines:

**Deadline to File a Complaint Objecting to Discharge of the Debtor *or* to Determine Dischargeability of Certain Debts: 4/2/04**

**Deadline to Object to Exemptions:**
Thirty (30) days after the *conclusion* of the meeting of creditors.

### Creditors May Not Take Certain Actions:
The filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized.

### Please Do Not File a Proof of Claim Unless You Receive a Notice To Do So.

| Address of the Bankruptcy Clerk's Office:<br>US Bankruptcy Court<br>US Custom House<br>721 19th St.<br>Denver, CO 80202-2508<br>Telephone number: 303-844-4045 | For the Court:<br>Clerk of the Bankruptcy Court:<br>Bradford L. Bolton |
|---|---|
| Hours Open: Monday - Friday 8:00 AM - 5:00 PM | Date: 12/24/03 |

059501